The next case before us this morning is M.G. v. Scrase, 23-2093, and actually while we're on that, I believe that the person holding that office has changed. Yes, Your Honor, it is now Secretary Kerry Armijo. Can you send in a 28-J letter to let us know that, because we have to substitute that. I would be happy to do that. She was just confirmed in the last legislative session, so. Great. Thank you. And we are ready when you are. May it please the Court, I'm Patty Williams, and I represent the New Mexico Human Services Department, which I'll refer to as HSD today, if that's all right, which is asking you to I'd like to reserve four minutes for rebuttal. And you know what I'm going to say. Yes, ma'am, and I will try to watch the clock and get your questions answered before that four minutes comes up. The plaintiffs in this case are extraordinarily sympathetic, medically fragile children who hover on the brink of death. The district court went to great lengths to act in favor of these children by entering a mandatory injunction. She admits the injunction is mandatory. The court didn't grant plaintiffs first preliminary injunction, and in the order denying it gave plaintiffs a roadmap. Plaintiffs did not follow that roadmap in renewing their preliminary injunction. And in setting the second hearing on the preliminary injunction, in which the order that you're to specify the exact information she needed before that hearing in an order directing briefing, plaintiffs still didn't provide all that evidence. The judge then crafted an injunction, despite the fact that plaintiffs did not meet their burden and were here today. We understand the humanity of the court and emotional appeal of these plaintiffs to all of us, but that's not the court's role. As the rubric above you says, reason is the soul of all law, not emotion. And that's what we have to separate when you look at the factual precedence and the evidence that was presented in this case. Is there any evidence in the record that there's not enough nursing capability to go around? Yes, Your Honor. What is that evidence? It would be the affidavit of Dr. Scrace in the first preliminary injunction hearing, which was relied on in the second preliminary injunction hearing. And each of the- Tell me what the affidavit says. What are the operative paragraphs? Oh, Your Honor, I do not have that affidavit. You don't have to read them exactly to me, but tell me what they are. What are the facts in there? That there is a longstanding nursing shortage in New Mexico and throughout the nation that was exacerbated by the COVID pandemic. And in the COVID pandemic, a lot of nurses obviously were pulled into hospital settings and that exacerbated the availability of private duty nursing services for people who would sit with one child in their home. Does it have numbers? Does it give any... It's just a general statement that... Okay. Yes, Your Honor, because there has not been a study by HSD into the mechanics and numbers of the nursing shortage, but each of the plaintiff's witnesses as well acknowledged that there's a nursing shortage. And that is not really a disputed fact in this litigation. The extent of the shortage is an issue, isn't it? I mean, if you offer higher salaries, you could maybe get the nurses notwithstanding a shortage, whether they be in New Mexico or whether they be in neighboring states or even on the East Coast. Your Honor, Judge Murphy, there are... The plaintiffs have speculated and the judge acknowledged the market factors that might encourage that scarce resource of nurses to leave a different setting and serve this population or serve another population where the pay is more in a different geographical location. It's pirating nurses. It's not creating new... Well, we call it competition someplace, don't we? Yes, sir. That there is... It's economic competition. Well, here the judge was pretty careful not to include any direction to raise the wages. I agree. Because we have some problematic authority from the Supreme Court that wouldn't allow that, correct? That's exactly right. But she tried to thread that needle to say... Well, she did thread the needle. All right. All right. Well, MCOs can raise the prices. And in fact, Justice Murphy, the MCOs have raised the prices that they pay based on a stakeholder study in which the plaintiffs participated. Well, New Mexico can tell the MCOs, I don't care how you do it. You need to get sufficient nurses so that these children can be provided for. And based on the preliminary injunction order, and there are a few examples that the district court provided to the state, we have requested the MCOs. And in fact... Well, you can demand, can't you? Because their fees are capped, and they have to provide set services. And you can tell them, provide the services so that we can get X number of hours for these children. Yes, Your Honor. And in fact, the human services has done that. And in fact, one of the two plaintiffs, MG, services are provided under a single case agreement, which is a special outside the capitated rates analysis to provide care for her. And they still are having trouble staffing her. Through no fault of the MCOs or HSD, we get reports that say, the child was fully staffed and the nurse called in sick. Or we took a vacation and didn't need hours. So there are factors outside HSD's control. But those are incidental things that happen, and that's not what we're talking about here. I hope that's not what we're talking about, Justice Murphy, but it's hard to know, based on the order, what is outside the control of HSD or not, on a week-to-week basis. Because literally, these child's needs change week-to-week. Well, as I understand the injunction, the injunction says, use your best efforts to provide the private duty nursing hours for which these vulnerable children have been approved. And that is correct. What is the HSD's objection to that? I mean, wouldn't they be using their best efforts to do that anyway? Well, Your Honor, that's exactly right. We are using our best efforts to do that anyway, and an injunction, a mandatory injunction in particular, that enjoins a party to follow the existing law, has been considered in many cases to be too vague to be enforced. Well, here, it doesn't say, comply with the Medicaid Act. It says, use your best efforts to provide the private duty nursing hours for which they've been approved, and here are some examples of things you might try. And thank you, Your Honor. I agree with both of those statements, except to the fact that ordering us to provide the private duty nursing hours is the equivalent to enforcing the Medicaid Act. They are the same thing. To meet the obligations of the state entity under the Medicaid Act is ordering them to follow the Medicaid Act in regard to, in particular, in this case, private duty nursing. Well, the Medicaid Act doesn't set the hours. It doesn't list the hours in the Medicaid Act, does it? No, it does not. And that's something that's more discretionary. Well, Your Honor, the record is not developed below, and that's another problem that HST has with the injunction. It's unclear how many of the hours are medically necessary to be provided by private duty nurses. There was evidence put on about that, wasn't there? There was speculative evidence put on about that. Well, that's an objection to the evidence. And we did object, Your Honor. Would you raise that here, that the district court abused its discretion by allowing speculative evidence? I mean, you don't have an evidentiary-based appeal here. Well, Your Honor, our issue on appeal, because where we are, is even assuming arguendo that plaintiffs met their burden, which we have said through the docketing statement and all of the pleadings below, and in fact, multiple motions to strike the evidence below, which are part of the record that you would be considering, De Novo, in this setting. Assume arguendo that they met the four elements, which we absolutely dispute, then the order is impermissibly vague. Best efforts comply with the law. And under the case law that we cited in our briefs, that is impermissibly vague, and especially in a mandatory injunction setting. If she would have said, instead of, use your best efforts, if she would have said, just do it, provide them the hours, where are you then? Well, I think that we're then in a position where it is impossible to comply, because there are not enough nurses to provide the hours. And we have an issue with, the act says, provide in-home skilled care. It does not say private duty nursing. And the evidence below was that the parents prefer private duty nursing to respiratory therapists or other people who can perform the same functions. And Dr. Sprace's affidavit lists all the required abstract services, and in his affidavit said 80% of those can be provided by in-home skilled providers other than private duty nursing. But what the injunction does is it keys off of private duty nursing hours that have been approved. So whatever the dispute is, who can do what, eventually they come down to the amount that are approved for each of the vulnerable children, and what the injunction says. And again, impossibility doesn't make sense here, because it's not impossible to use your best efforts. It may be that your best efforts can't get enough private duty nurses, but that's not what the district court is saying. And your honor, I will submit two things. Number one, HSD has made its best efforts, and I can give you a list that makes it different than the Norwood injunction. Would you break that list down into two categories? What you did before the case was filed, and what you've done after the case was filed. That's a little harder, your honor. Yes, I know, but it's very important for us. The injunction orders us to do something after the order was entered, and it's undisputed that HSD has... Obviously we couldn't do that before the order, comply with the order or not. I don't understand that. Just go ahead and list the things you did before the case, and the things you did after the case. Okay, I'm happy to do that, and I'm not going to have any time for rebuttal, but I think this is important if it's important to you. That's too bad. I know I'm good with that. I'm good with that. Before the injunction was entered and before the lawsuit was filed, HSD actually arranged services and the language in the Medicaid Act is for treatment that HSD does not have to provide. It has to arrange for, and it's undisputed that HSD is actually arranged through contracts with the managed care organizations, which in turn contract with home health care agencies, which in turn contract with the private duty nursing. All that was in place before the lawsuit was filed and before the injunction was entered. I want to make sure I understand that. So what you're saying is before the lawsuit was filed, HSD had contracts with the MCOs that these services were to be provided? Yes, Your Honor. Okay. Yes, Your Honor. But they weren't being provided? Well, until the lawsuit was filed, we're unaware that for these children that those services were not being provided, that the home health agencies could not adequately staff the clients that they had taken on. It is undisputed that HSD, before the lawsuit was filed, contracted with the University of New Mexico Medically Fragile Case Management Program to provide case management services, including the arrangement of in-home skilled health care for medically fragile students. That was in place before. And Ms. Agard, who they rely heavily on, said that that was part of her job and that she tried to do that job and was unable to find medically fragile children PDN care, despite her best efforts. It's undisputed that before the lawsuit was filed, HSD had promoted the use of traveler to staff hospitals, which ostensibly would free up New Mexico resident nurses to provide PDN services to this population. It's also undisputed that after the injunction, and this may answer your question, Justice Murphy, HSD has complied with a few specific examples in the preliminary injunction order that are subparts of one, and they have done that. So my time is over, and I'm happy to answer any other questions. To finish your list, did you have time to complete your list? Those are the main categories, because those are the things, and HSD, it is undisputed, has never denied a claim for reimbursement for private duty nursing services for any population, including the medically fragile population. So the second part of Judge Murphy's question was, and what have you done since the lawsuit was filed? Anything in addition that you want to add to your list that was after filing? Your Honor, we took the directions, which the judge described as examples, in the preliminary injunction order and have fully complied with those. We get reports from the MCOs on their efforts, which is one of the categories, to determine what efforts are being made. We have done outreach and recruiting efforts as well, but HSD does not hire the nurses. They have this contractual flow down that we are in charge of, for sure, and are trying to make sure that that is working effectively. It's like a waltz. You say, we don't contract for services, and then you say, and we don't provide the services, and we don't go after the nurses, that's all MCO stuff. And then on the stuff that you did before the lawsuit, you talk about arrangements you made with the University of New Mexico, about arranging for traveler nurses. That sounds like you are doing things that you say the MCOs are supposed to be doing. Your Honor, I may have misspoken. We arranged, we have contracts with the University of New Mexico, Medical and Fragile Case Management Program. We have contracts with the MCOs, who in turn have contracts with the home health agencies, who contract to provide the private duty nursing to these clients. A separate issue is the use of traveler nurses, which there's testimony in the record that the plaintiffs don't want, traveler nurses can only be in a position for 13 weeks, and that doesn't provide the stability that this group of children would need. The parents indicated that they didn't necessarily want new people every 13 weeks in their home, but if we staff the hospitals with those short-term traveler nurses, then that frees up, which is, I don't know that it's fair to say we're putting you out of the hospital setting with you picked resident New Mexico nurse, but you can go serve a medically fragile child in their home. But that's something that we have put in place, the use of traveler nurses. And unless there's any follow-up, your time is up. Thank you, I appreciate it. Excuse me, may it please the court, I'm Nancy Simmons, I'm appearing for the plaintiffs, and also there's now a certified class of medically fragile children in New Mexico. There's about 50 children, more or less, that will be part of the class. I thought we were just here on the two individual claimants. We are. I'm assuming that the preliminary injunction will apply to the class, but we're at the early stages even of notifying class members, so that is, you're right, your honor, basically that's beyond anything that we need to talk about today. First, I'd like to make clear, pre-authorized services are PDN hours a parent could elect to settle for a home health care aid with a huge gap in skill set. Anyone in this courtroom could become a home health care aid, including, sadly, myself, but I would not be allowed to be alone with the child, and I would not be allowed to fix the ventilator, change the gastronomy tube, all the highly skilled tasks that are necessary, but there are parents who either say, well, I'd like the flexibility of having a health care aid, or who realize that there is not a nurse available and somebody to help me with a wheelchair, I'll take that. But the pre-authorization is for all PDN hours. The district court said that at any time the HSD could come forward and say that PDN hours were not medically necessary, and that, in fact, in my mind, your honors, was a gift, and certainly it's up to the discretion of the district court, but in fact, pre-authorization pursuant to CFR section 422.138 says that if a service is pre-authorized, an MCO can challenge it by presenting evidence by saying, oh, no, you shouldn't be getting these PDN hours, turns out you're not on a ventilator. I mean, it's hard to imagine a situation where an MCO would challenge, and in this case, the MCOs never did challenge the right to the PDN hours because of the rigorous process that has already occurred by the time they're qualified to receive, you go through the, they go, and what the, what UNM does, they don't hunt for nurses, they put the parents through, put the application through a rigorous process where they determine based on the medical record what would be appropriate in terms of private duty nursing hours. They check with the primary care physician, the primary care physician in the end signs off on the level of care, the level of care then goes to a group called Comagine, which is a third-party assessor that goes through and says, okay, yeah, we approve it, they're actually on behalf of HSD. It's then sent to the MCOs, and the MCOs can say, you know what, I don't think this kid is sick enough to need PDN hours, but in fact, just the number of 50 in New Mexico tells quite a story. These are children that are on the edge of death. Is this methodology you're talking about, that's how you get to, it's called EPSDT? Yes, sir. The EPSDT budget then is finalized by approval by the MCOs who sign off on it, but at that point it's gone through all kinds of medical rigor, and the UNM hospital contracts with HSD to just sort of do the initial work and then make sure it gets through all the different stages. And this is done for each child who might fall into the category of medically fragile? Exactly. And do the parents have a participation in this EPSDT process? Well, they would be interviewed, but they couldn't say, oh, my child really needs a ventilator, if the primary care physician hadn't ordered it and said, yes, they really need a ventilator. So they participate, just like when I take my, thankfully, very healthy child, a long I said, oh, so what do I do now? And there is that level of participation, but it's not a decision making. Okay, you go through the screening, diagnostic, and training, and during that process, a distinction can be made between private duty nurses and something different, not as trained. Is that correct? The parent could turn down the nursing services, just like I'm entitled to it. In the process of determining what is needed for this particular child, do they go through a process that says, well, they only need so many hours of private duty nurse, but they can get by with fewer hours and then add more aid hours? No, they don't go through a process where it's allocated. As the district court found, the APSDT budget sets forth a certain number of hours, and those are all PDN hours. What the district court said was that HSD could come forward and say, not all of those need to be PDN hours. There's a rebuttable presumption, but if you can show that it's not medically necessary, then we'll take another look at it. For now, I'm going to say that whatever is budgeted is for PDN hours. When you think about it just logically, it doesn't make sense to say you only need a couple of nursing hours because there is no nurse who can work just a couple of hours and check on. It's shift work. What you're substituting for, and what I think is sometimes lost, is that we also brought our ADA Section 504 claim to say that this is a substitute to get a child out of an institution. In an institution, there's always a nurse there. This is already sort of a step down that the nurse is not there 24-7. But there's not a PDN requirement 24-7, is there? No, Your Honor. I think that would be, I don't know for sure, but I don't think that Medicaid pays for 24-7 PDN hours. Right. So part of the day in this child's life, they are dependent on their parents to provide services that would otherwise be provided by a private duty nurse. They are, Your Honor. And that's one of the difficulties of being a parent of one of these children. And it is a step down from life in an institution. But the choices made being at home has benefits that even though there is a risk, that when the child is, for example, awake and at home with a parent who's been highly trained, that maybe they can, there are times when there's not an emergency. But that the nurse is necessary to be coming in and checking what the parent is understanding. And for example, one of the things that Ms. Seavey's mother testified to is that when taking the child out, if the child goes to school or if the child goes on a community outing, just having the mother there isn't doable. Some of these parents, of course, work. I understand, but that's not my point. My point is that you don't have to have constant, incessant private duty nurse presence. Most of the day, that private duty nurse is not going to be there even if you meet the approved hours. And so something that is, I don't want to say less, but it's different, not trained in the same way as a private duty nurse, will suffice. Well, Your Honor, Medicaid is set up so that your choice for the PDN hours, this particular kind of service is either a nurse or these home health care aides. So it's clear you can't swap out a respiratory therapist, for example. You either get a nurse who's there for 40 hours or a home health care aide who's there for 40 hours or a nurse who's there 20, a nurse and a health care person who's there for 20, and it's up to the parent's choice. And so we're sort of stuck with what Medicaid has provided. And what we're saying is, and what the law says, is that once you're preauthorized for PDN hours at 40, you can get those 40, and that the state has to make reasonable efforts, at least, to ensure that those nursing hours are provided. And the idea, for example, that they were ignorant of this problem with the MCOs not providing the nurses, not providing a rate that would attract nurses beforehand. There were substantial meetings before the lawsuit was filed. After the lawsuit was filed, all that we were told to do, and all that's on the record, was exhaust your administrative remedies. Go to a hearing every week that you don't get these hours, and somehow something will happen magically that will give you these hours. And what we said is, no, it's a statewide problem. It's certainly a problem as to these two children that routinely aren't getting their hours, and it's because of the rates. And Michelle German, who runs the largest nursing agency in the state, she's in Bernalillo County, where, by the way, there is no nursing shortage, according to the records we submitted, according to the studies that have been done. There's no nursing shortage in Bernalillo County. So there should be nurses available. Why aren't they coming? They're not getting paid enough. Did you put on evidence that counteracted, then, this affidavit from this doctor who talked about the shortage in New Mexico and nationwide? Oh, very much. Very much, Your Honor. One, Judge Strickland correctly found that he did brainstorming in terms of what you could do if there were no nurses at all. And mostly his experience was during COVID, which is a different issue when there were otherwise healthy adults going into hospitals needing ventilators because of COVID. What is going on now is that what Ms. German testified to is that she receives different rates for her nurses that are in her agency. Presbyterian pays substantially less. She can't fill those hours. What's the source of your evidence that there is no shortage in Bernalillo County? We submitted, and I would have to look, Your Honor, but we submitted a study that was done, a public information document that said Bernalillo County did not have a nursing shortage. It was done by the state of New Mexico. But there's also the fact that this is an impossibility defense to say there are no nurses in Bernalillo County. That study is in the record? It is, Your Honor. It's attached to, I think, the second motion for preliminary injunction as an exhibit. And it's a map of the state of New Mexico, and Bernalillo County appears as not having a shortage. But there's also the fact that this was an impossibility defense, that the defendants did not prove that there was a nursing shortage such that nothing could be done. And, in fact, what has happened since, for example, getting a single-case agreement for MG has helped, but that was court-ordered. Okay. The argument that you're making right now on talking about the rates that these private-duty nurses are being paid seems to be different than the argument that you've been making in response to your opponent's reliance on Armstrong, which is, oh, no, we're not saying you have to raise the rates, and the injunction doesn't say that you have to raise the rates. But today you're arguing you need to fix this by raising the rates, and that in one county they pay more so they don't have a shortage. No, it's that they pay more in the entire state. But let me explain, Your Honor, why the rates. That is a critical issue, but it's a mistake to think that what we are asking is that the court affirm an injunction that ordered the MCOs to receive more from HSD. HSD pays a capitated rate to the MCOs. So each child gets a certain amount of money from the state, and with this, a medically fragile child, the capitated rate is higher. So $100,000, let's say. I don't know what it is. But for Angie, here's $100,000. Make sure she gets nurses. Make sure she gets, you know, whatever she's entitled to. And then Presbyterian takes that money, and they negotiate with nursing agencies. That's where the nurses are paid. That's the rates we're talking about. And Presbyterian pays less, substantially less, to the nurses that it contracts for, the Presbyterian MCOs, versus Blue Cross Blue Shield that pays more to the nursing agencies. The nursing agencies don't put this into one big pool. They pay their Blue Cross nurses what they can, pursuant to their contract with Blue Cross MCO, and they pay their Presbyterian nurses. We understand that, but the question is, the suggestion is that you're saying increase the prices. That's one way to increase the number of nurses. Well, but you deny that you're doing that in the proceedings of district court. Respectfully, Your Honor, no, because there's a difference. What Armstrong says is, one, we distinguished, my time is up, if I could finish my thought on it. Yes, you have some additional time because your opponent went over. Thank you, Your Honor. First, we argued strenuously that Armstrong didn't apply, and Judge Strickland held that Armstrong didn't apply no matter what, because it was a different situation where providers were trying to get a benefit based on the supremacy clause, as opposed to being the recipients of the benefit. So there's that. But setting that aside, let's say Armstrong does apply. Armstrong says that if Presbyterian comes in, or if we try to force HSD to pay Presbyterian more, that per capita rate, that might be a problem. But we're saying that what HSD can do, and what it in fact is now starting to do because of a preliminary injunction, is tell its contracting party, Blue Cross Blue Shield, here's your floor. Whatever you do, don't pay less than this to the nursing agencies because you're cheating them. Because, of course, any time Presbyterian doesn't pay enough to the nursing agencies to attract nurses, it gets to keep all that per capita money itself. So your position is that when you're talking about pricing and you're talking about floor, you're talking about things that the state can do. Yes. Not that you're demanding they do, but this is one alternative. Is that correct? Yes. That's not part of the injunction. I mean, the district court didn't go anywhere near dictating to the state what the rate should be. No, Your Honor. No. It did not, and we're not saying that it should. We're saying this is one possibility. You're saying you have empowered Mexico to kick them in the rear end, these MCOs, and tell them how they're going to use the dollars that they're capitated on. It's a needs-based contract. So it tells Presbyterian, here's a per capita amount of money. With this, meet the needs of MG. And when they don't, HSD has all kinds of possibilities, including a letter of direction, for example. That's what they're starting to do. Enter into the single case agreement that they made for MG that's ordered by HSD to the MCO. That happened because of the preliminary injunction. Judge Strickland then said there's not enough being done, so I'm going to appoint a special master to come up with more ideas. And we're going to look at how to do this, but you're just standing back, HSD, saying, well, we gave this money to the MCOs and we can't do anything else. That's not good enough. You need to work the problem. And one way to work the problem is to pay more. Well, the injunction does not order them to pay more or to set a ceiling or a floor on the payments. No, it does not. It gives them the flexibility. If they do everything in the injunction, they try, in good faith, and they still have a shortage of private duty nurses, would you recognize that they've complied with the injunction? Well, I think that would be a question for Judge Strickland. It would depend on what they did. But certainly if they work the problem, they use their contractual standing to say, this is what we asked you to do, Presbyterian. This is what we want you to do. Or if they figure out the whole thing about traveling nurses is news to me that they've been working the issue of traveling nurses, that that might solve it. If they have done their best and there's still a shortage, there may be in Norwood, which is a case we relied on quite a bit, they came up to about 90%. You can only do what you can do. Unless there are further questions, you're now at the extra time. You're now even on your extra time. Thank you for the extra time, Your Honor. Good job. We'll take this matter under advisement. We appreciate your argument.